## McEwen *v.* Gilker.

CITY.—*Street Improvement.* — *Advertisement for Proposals.* — The common council of a city possesses no power to make a contract for the improvement of a street until after advertising to receive proposals therefor.

SAME.—*Transcript.*—Where the transcript on appeal from an assessment for the improvement of a street fails to show such advertisement for proposals, it is defective, and a demurrer may properly be sustained to it.

SAME.—*Issue of Law.*—Such an omission in the transcript presents an issue of law, and not of fact, and is not within the proviso of section 71 of the act for the incorporation of cities.

APPEAL from the Bartholomew Common Pleas.

BUSKIRK, J.—The appellee, a contractor for the improvement of a street in the city of Columbus, obtained a precept against the appellant, a property holder on said street, to enforce payment of an amount assessed against him, as his proportion of the cost of such improvement. The appellant appealed from such precept to the common pleas.

When such appeal is taken, the city charter requires the city clerk to make out and certify a full, true, and complete copy of all papers connected in any way with said street improvement, beginning with the order of the council directing the work to be done and contracted for, and including all notices, precepts, orders of council, bonds, and other papers filed in the matter, which transcript shall be in the nature of a complaint, and to which the appellant shall answer upon rule. Section 71, City Charter, 3 Ind. Stat. 101.

Upon the taking of the appeal, the clerk made out and filed in the common pleas the required transcript. To this transcript, the same being in the nature of a complaint, the appellant demurred, on the grounds that the compliant did not contain facts sufficient to constitute a cause of action, and that it did not state facts sufficient to show that the common council had jurisdiction to make the contract or the assessment. The court overruled the demurrer, and the appellant excepted.

The appellant answered in four paragraphs; the first was

the general denial; the others set up affirmative facts in bar of the action. The court sustained a demurrer to the second, third, and fourth paragraphs, to which ruling an exception was taken. The appellant withdrew the denial, and the court rendered final judgment for the appellee.

The appellant has assigned for error the overruling of the demurrer to the complaint, and the sustaining of that to the second, third, and fourth paragraphs of the answer.

The first question presented for our decision is, whether the court erred in overruling the demurrer to the complaint. The objection urged to the complaint is, that it does not affirmatively appear that there was an advertisement that bids would be received for doing the work, before the making of the contract with the appellee. It is maintained by the appellee, first, that the common council had the power to make a valid contract for such improvement, without advertising to receive proposals for doing such work; and, in the second place, that the objection cannot now be urged to the proceedings of the common council, for the reason that it involves a question of fact which occurred prior to the making of the contract.

We will first inquire whether the failure to advertise for proposals to do the work affected the validity of the contract. So much of section 68 of the city charter as relates to the question under consideration reads as follows:

"Sec. 68. When the owners of two-thirds of the whole line of lots or parts of lots (and measuring only the front line of such lots as belong to persons resident in such city) bordering on any street or alley, consisting of one whole square between any two streets crossing the same, of [or] if the common council deem it expedient, for any reasonable distance upon any square or alley, less than one whole square or block, shall petition the common council to have the sidewalks graded and paved, or the whole width of the street graded and paved, or for either kind of improvement, or for lighting such street according to the general plan of such improvement, in said city, the common council may

cause the same to be done, by contracts given to the best bidder, after advertising to receive proposals therefor."

It was held by this court, in *The City of Lafayette* v. *Cox*, 5 Ind. 38, that "with us, cities are created and endowed with powers by the legislature, under what are called charters; and it is an established rule of law, one so well known that it would be superfluous to cite authorities as evidence of it, that, in their action, these cities must be confined within the limits that a strict construction of the grants of powers in their charters will assign to them."

It was held by the Supreme Court of the United States, in *Harris* v. *Runnels*, 12 How. 79, that "contracts in violation of statutes are void; and they are so whether the consideration to be performed or the act to be done be a violation of the statute. A statute may either expressly prohibit or enjoin an act, or it may impliedly prohibit or enjoin it, by affixing a penalty to the performance or omission thereof. It makes no difference whether the prohibition be expressed or implied. In either case, a contract in violation of its provisions is void. The rule is certain and plain."

It was held by this court, in *Deming* v. *The State, ex rel. Miller*, 23 Ind. 416, that "the general rule of law that a contract prohibited by statute is void, is familiar, and we do not lose sight of it. It is a wholesome rule in every case where it is properly applicable. The general doctrine as to such contracts is, that the courts will not enforce them, nor aid in the recovery of money paid in pursuance of their terms, but parties who have contracted in violation of law will be left without remedy whenever they are *in pari delicto*. The plain reason and purpose of the rule commends it to every enlightened judgment. It is to secure obedience to the statute which has forbidden the thing to be done, and thereby aid in accomplishing the legislative intention."

The section above quoted places a restriction or limitation upon the power of the council to make a contract for the making of the improvement. "The common council shall cause the same to be done, by contracts given to the best

bidder, after advertising to receive proposals therefor."
The common council possesses no power to make a con-
tract until after there has been an advertisement for pro-
posals. The giving of notice by advertisement for proposals
to do the work constitutes a condition precedent to the right
to make a contract. It is equivalent to a declaration on the
part of the legislature that the common council shall make
no contract, unless there has been an advertisement. The
prohibition may be express or implied. It is, very clearly
implied by the language employed that the common council
is prohibited from making a contract until after there has
been an advertisement.

It was said by the court, in *Harris* v. *Runnels, supra*, that
"where a statute is silent, and contains nothing from which
the contrary can properly be inferred, a contract in contra-
vention of it is void," and "that the statute must be exam-
ined as a whole, to find out whether or not the makers of it
meant that a contract in contravention of it should be void,
or that it was not to be so."

An application of the above rule to the act under consid-
eration will demonstrate that the legislature intended that
no man's property should be sold to pay for street improve-
ment, unless the law had been complied with. This is shown
by the following clause in section 71 of said act, which
reads as follows: "And in case the court and jury shall
find upon trial that the proceedings of said officers subse-
quent to the said order directing the work to be done are
regular, that a contract has been made, that the work has been
done, in whole or in part, according to the contract, and that
the estimate has been properly made thereon, then said court
shall direct the said property to be sold and conveyed by the
sheriff thereof, as the said treasurer is hereinafter directed
to sell and convey property liable to street improvement."

In placing a construction upon the above clause we should
look to the entire legislation on the subject, and should adopt
such construction as would give a reasonable effect to every
part, if capable of such construction; and as such legislation

is against common right, and the proviso is an innovation upon established rules, such a construction should be adopted as would further the ends of justice. One of the proceedings required by the statute, subsequent to the order directing the work to be done, is a public advertisement that proposals will be received for bids to do the work. The advertisement for proposals is prior to the making of the contract, but subsequent to the order directing the work to be done. The next requirement is that a contract shall be made. This implies that it shall be a legal and valid contract. The common council possessed no power, authority, or jurisdiction to make a contract until after there had been an advertisement for proposals, and as the transcript failed to show that this indispensable prerequisite had been complied with, it was defective. This is in accordance with the adjudged cases.

It was held by the Supreme Court of New York, in the case of *DeBaun* v. *The Mayor, etc.*, 16 Barb. 392, that "the corporation of the city of New York had no power to make a contract for paving of streets, without advertising for proposals, and giving the contract to the lowest bidder.

It was said by the court of appeals of New York, in the case of *Brady* v. *The Mayor, etc.*, 20 N. Y. 312, in speaking of the making of a contract for a street improvement, that "if this had been done, and if the result of all the offers had been taken into the account in selecting the lowest bidder, a contract given to that person would have been awarded according to the statute."

It was held by the court of appeals, in the case of *Bonesteel* v. *The Mayor, etc.*, 22 N. Y. 162, that "it does not require any argument to show that a contract made in violation of the requirements of the charter is null and void. It is equally clear that a contract made in conflict with the authority granted is equally null and void."

We are of the opinion that the common council possessed no power, authority, or jurisdiction to make the contract with the appellee, until there had been an advertisement for

proposals, and a fair opportunity had been given to obtain competition in the doing of the work; and as this was a jurisdictional fact, and constituted a condition precedent to the right to make any contract, it must affirmatively appear in the transcript, and if it does not so appear the complaint will be defective.

This construction is in accordance with the requirements of the statute, and is sustained by authority, principle, and public policy. It is but carrying out the obvious intention of the legislature. It is quite manifest to us that the intention of the legislature, in providing that no contract should be made until after advertising for proposals, was to secure competition and prevent favoritism, imposition, and fraud. The greatest frauds might be practiced, if the common council, or those acting under and by their authority, might make contracts for improvements without public notice, inviting and securing competition. Contracts might be given to favorites at unreasonable and exorbitant prices. It is our duty to give the statute such a construction as will carry into effect the legislative intention, and thereby protect, as far as may be, the owners of property in our incorporated towns and cities from the payment of unnecessary and unjust burdens.

We are next to inquire and determine whether the objection to the sufficiency of the complaint can be raised by demurrer to the complaint on an appeal from a precept.

It is claimed by the appellee that the appellant is prohibited, by section 71 of the city charter, from urging any objection to the sufficiency of the complaint, or the regularity of the proceedings which arose prior to the making of the contract for the improvement under the order of the council.

So much of section seventy-one as relates to the point under consideration, reads as follows:

"Any owner of land, or his representatives, aggrieved by such precept, may appeal therefrom within twenty days after such demand or publication to the court of common pleas of the county wherein such city is situated, upon filing

sufficient bond with the clerk of said city, conditioned for the payment of whatever judgment may be rendered against such appellant in said court, and such appeal shall stay all proceedings by such treasurer, and the trial of such appeal shall be conducted as other trials of civil causes are conducted in said court; provided, that no question of fact shall be tried which may arise prior to the making of the contract for the said improvement under the order of the council."

Issues are of two kinds: first, of law; second, of fact. An issue of law is presented by demurrer to the complaint or subsequent pleadings, and must be tried by the court. An issue of fact arises upon a material allegation in the complaint, which is denied by the answer, or upon a set-off or counter claim presented in the answer, and denied by the reply; or upon material new matter in the reply which shall be considered as controverted by the opposite party without further pleading. An issue of fact must be tried by a jury, unless a jury trial is waived. See sections 317, 318, 319, and 320 of the code, 2 G. & H. 195 and 196.

It is provided in the above proviso, that no question of fact shall be tried which arose prior to the making of the contract, etc. It is provided by section 71 of said act, that the transcript shall be in the nature of a complaint, to which the appellant shall answer upon rule. What can the appellant answer? If the position of the appellee is correct, the appellant cannot, by demurrer, raise the question of whether the common council possessed jurisdiction to make the contract; and it is quite clear to us, from the language of the above proviso, that no question of fact can be tried which arose prior to the making of the contract. Then why was an appeal from the precept authorized? The subsequent part of section 71, above quoted, provides what shall constitute the transcript. It seems to us that the only reasonable and intelligible construction that can be placed upon said section is to hold that the proviso was enacted upon the supposition that the transcript would show that such acts

had been done and proceedings had by the common council as were necessary to confer upon that body jurisdiction to make a valid and legal contract, and that the truth of the matters alleged in the transcript to have occurred prior to the making of the contract, should not be controverted by the answer and an issue of fact formed and tried by the court or jury, but that it was not intended that the appellant should be deprived of the right, by demurrer, of presenting the question of whether the common council had jurisdiction to order an assessment to be made upon private property for the public good.

The case of *Macey* v. *Titcombe*, 19 Ind. 135, is much in point. Titcombe was a contractor for grading a street in the city of Indianapolis. Macey and others applied for and obtained an injunction restraining Titcombe from proceeding with the work, and executed an undertaking, payable to the city and Titcombe. Titcombe commenced an action on the undertaking. The defendants demurred to the complaint. This court say: "Now, to make it appear that the injunction was not rightly obtained, and that Titcombe sustained legal damage from its issue, a legal contract for grading the street must be shown. To make such showing, it is not necessary for the complaint to aver that the city had power to improve the streets, as the court takes judicial notice of that, the charter of the city being a public law. But it is necessary that the complaint should show that a legal contract, for the improvement of the street, was entered into by the city, with Titcombe. The complaint shows that the improvement in question was ordered, by the city council, to be made in the manner prescribed by the charter, and that a contract was entered into, with Titcombe, for making it; but it fails to show that between the ordering of the improvement, and the contracting for its execution with Titcombe, an advertisement for bids for its construction was published. Without such advertisement, the contract was void."

The case of *The City of Logansport* v. *Legg*, 20 Ind. 315, is directly in point. That was an appeal from a precept.

McEwen *v.* Gilker.

The appellant demurred to the complaint; the demurrer was sustained; the city appealed. The court say: "Against the validity of the proceedings before the city council, it is alleged that the transcript, as a complaint, is defective, because it fails to show any proper order of the council directing the improvement." The court further say: "And the order being thus inoperative, the proceedings subsequent to it cannot be maintained." The effect of the above decision is, that there must be a valid order or ordinance for the making of the improvement, and that if this is not shown by the transcript, it is fatally defective, and the question may be raised by demurrer. There must be a valid contract for the making of the improvement, and if this is not shown by the transcript, the subsequent proceedings cannot be sustained, and the objection can and ought to, in our judgment, be raised by demurrer to the complaint. If this cannot be done, the courts of this State would be required to render a decree for the sale of the property of a citizen, upon an assessment made for street improvements, where there had been no valid order or legal contract made. The remedy, by injunction, would not afford an adequate remedy in all cases. That remedy has to be resorted to before the completion of the work, and not afterward. The language of the proviso is as follows:

"Provided, that nothing herein shall be so construed as to prevent any person from obtaining an injunction upon the proceedings prior to the making of any such improvements."

Suppose that the owner of the property is a non-resident, or absent, and has no knowledge of the making of the improvement until after the work was done and a precept had. issued. His remedy, by injunction, is gone. He then appeals from the precept, and it is ascertained in the common pleas that no order or ordinance had ever been made by the common council directing the making of the improvement, and that no valid or legal contract had been made. Can it be maintained, by authority or on principle, that these fatal de-

fects cannot be pointed out by demurrer to the complaint, but that the court, in the face of such facts, showing an entire want of authority or jurisdiction on the part of the common council to make the assessment, is required to enter a decree for the sale of the property, and thus deprive a citizen of his property without due process of law? We think that such a decree would be a gross outrage upon justice, and a reproach to the administration thereof. As has been shown, municipal corporations are created by, and derive all their power and authority from, the charter creating them. They can exercise no power that is not expressly, or by necessary implication, granted, and these powers must be exercised in the manner defined by the statute.. The statute has pointed out the manner in which the owner of property may be compelled to contribute, according to the extent and value of his property, to the making of certain improvements. Before the property of the citizen can be sold upon a precept, the following things are required to be done: first, there must be an order or ordinance of the common council directing the improvement to be made, which must be adopted by a vote of a majority of the council where there is a petition, and by a vote of two-thirds where there is no petition, and the record must affirmatively show that it was adopted by the requisite vote; second, there must be an advertisement for proposals to do the work, followed by a contract for the making of such improvement; third, the work must be done, in whole or in part, according to the contract; fourth, there must be an estimate made of the work, and an assessment apportioning the costs or expense of doing the same on the property holders, in the mode defined in the statute; fifth, the owner of the property must fail or refuse, for the space of twenty days after the making and filing of such estimate, to pay the same; sixth, after the space of twenty days, the contractor must file his affidavit in the clerk's office of said city, stating that the whole or some part of said assessment remains unpaid, showing the amount paid, and the amount due, that the estimate thereof has

been duly made, and that the work estimated has been done according to contract; seventh, the clerk is required to lay such affidavit before the council, which shall thereupon order a precept to be issued, directed to the treasurer of said city, which precept shall be read by the treasurer to the person or persons against whose property the same was issued. When these things have been done, then the property of the citizen may be lawfully and rightfully sold to pay such assessment, and not otherwise.

The counsel for the appellee has referred us to the following decisions of this court, as holding that no objection can be urged, on an appeal from a precept, to any part of the proceedings which occurred prior to the making of the contract: *The City of Indianapolis* v. *Imberry*, 17 Ind. 175.; *The Board of Commissioners of Allen County* v. *Silvers*, 22 Ind. 491; *Palmer* v. *Stumph*, 29 Ind. 329; *Hellenkamp* v. *The City of Lafayette*, 30 Ind. 192.

The case of *The City of Indianapolis* v. *Imberry*, *supra*, does not sustain the position assumed by the counsel for the appellee, but, in our opinion, sustains the conclusions heretofore stated. That was an appeal from a precept. In the common pleas, the appellant demurred to the complaint. The demurrer was sustained, and the city appealed. This court, after discussing various other questions of law, say: "After the issuing of the precept, the property holder may appeal to the common pleas, where his cause may be tried upon the merits; except that he cannot go behind the making of the contract to show irregularities. If any irregularities occur prior to that act, they must be taken advantage of by an injunction suit, before the work is performed. By omitting thus to proceed, the party waives objection up to the making of the contract. This is the provision of the charter."

The above portion of the opinion refers to a trial upon the merits of the case, and is based upon that portion of the proviso which says, that no question of fact shall be tried which arose prior to the making of the contract. The court

speaks of irregularities, without defining what was meant thereby. We must presume that the court meant mere irregularities, and not fatal jurisdictional defects; for, in *Macey* v. *Titcombe, supra,* the court held, that where there was no valid contract, the subsequent proceedings were void; and in *The City of Logansport* v. *Legg, supra,* the court held that where the complaint did not show a valid order for the making of the improvement, the complaint was bad on demurrer. But the court further say: " In the case at bar, the transcript of the record of the corporation constitutes the complaint; and did the transcript fail to show that all necessary steps had been taken, the questions would arise whether they could be proved by parol, without a complaint showing that the omitted steps had actually been taken; whether such complaint itself would be allowed; or whether the remedy would not be to apply to the council to have omitted entries made, *nunc pro tunc,* and a correct transcript filed in the common pleas. This latter course looks the most reasonable, and the party might be driven to it by demurrer. In the case now before us, the transcript is sufficient.

The case of *The Board of Commissioners of Allen County* v. *Silvers, supra,* is not an authority in point on the questions involved in the case under consideration. That case was governed by the act of March 9th, 1857. In that case the petition, as required by the charter, was presented to the council; the council accepted the petition, and ordered an advertisement for proposals; the advertisement was published; proposals were received, and the contract awarded to Silvers; a written contract was entered into between the common council and Silvers; the sewer was constructed, an estimate made, and a precept issued. From this precept the board of commissioners appealed to the common pleas, where the case was tried on its merits. There was no demurrer to the complaint, or any pretence that the necessary steps had not been taken, prior to the making of the contract. The principal question in the case was, whether the

common council, under the charter, had the power to con-
struct a sewer.   The court discussed the question of whether
the proviso was valid, and held that it was, and that no
question of fact could be tried which arose prior to the
making of the contract; but the court did not decide, for it
was not in issue, that when the transcript failed to show that
the common council had jurisdiction, the objection could
not be taken by demurrer.

The case of *Palmer* v. *Stumph, supra,* was an appeal from
a precept.   There was a trial in the common pleas, upon the
merits.   It is not shown by the opinion that there was a de-
murrer to the complaint; but it is stated in the opinion that
two objections were urged, in this court, to the transcript.
The first was that the precept was issued before the filing of
the affidavit.   The court found from an examination of the
transcript that the affidavit was filed before the issuing of
the precept, and that the apparent defect was occasioned by
a clerical error.   The second objection urged was that the
transcript showed that the improvement ordered by the coun-
cil, and made by the contractor, was upon the national road,
within the limits of the city.   It was insisted that such road
was not included in the town, as a street of the city.

This court, in speaking of the last objection stated, after
quoting the proviso under consideration, say: "The plain
intent of the statute is, to prevent the owner of property,
to be benefited by a contemplated improvement made by
the common council of a street in front of his property,
from remaining silent until he has secured the full benefit of
the work, and then avoiding the payment therefor.   If he
denies the power of the council to order the improvement,
he must test the question by injunction before the work is
done.   Acquiescence in the action of the council is by law
made to estop him from going behind the making of the
contract."

The decision in the above case is made to depend upon
a question of abstract power in the common council to order
the improvement, and not upon whether an order had act-

ually been made and a legal contract had been entered into. The opinion delivered by the same learned judge in the subsequent case of *Hellenkamp* v. *The City of Lafayette, supra*, conclusively shows that he had no reference to the making of the order and the contract; for in the latter case it is said: "Still if there be an order of the council, and a contract under it, the only questions to determine are, 'that the work has been done, in whole or in part, according to contract, and that the estimate has been properly made thereon.'"

The only question involved in the above case was, whether the common council had, subsequent to the making of a contract, the right, with the approval and consent of the contractor, to make a change or modification of the contract. The court very properly held that such power existed, but it is clearly stated that an order of the council, and a contract under it, were necessary to sustain an estimate and precept, by which property could be legally sold.

Chief Justice MARSHALL, in delivering the unanimous opinion of the court, in *Thatcher* v. *Powell*, 6 Wheat. 119, which was an action of ejectment, involving the validity of a sale for taxes, says: "That no individual or public officer can sell, and convey a good title to, the land of another, unless authorized so to do by express law, is one of those self-evident propositions to which the mind assents without hesitation; and that the person invested with such a power must pursue with precision the course prescribed by law, or his act is invalid, is a principle which has been repeatedly recognized in this court."

Again, he says: "In summary proceedings, where a court exercises an extraordinary power under a special statute prescribing its course, we think that course ought to be exactly observed, and those facts especially which give jurisdiction ought to appear, in order to show that its proceedings are *coram judice.*"

It was said by this court, in *Wilson* v. *Poole*, 33 Ind. 443, which was an action to recover the possession of land, the title to which depended upon the validity of a sale upon a

precept for a street improvement, that "it matters not that the lot-owner may interpose by appeal to arrest the proceedings. It is only by virtue of the statute and by a strict compliance with all its material requirements that the officers of the city could have any power to alienate the property."

We hold that the transcript must show a valid order of the common council directing the making of the improvement, and a legal and valid contract under such order, after advertising for proposals; and if these facts do not appear, the complaint will be held bad on demurrer.

The conclusion that we have reached renders it unnecessary for us to determine whether the answers were good or bad, as they were good enough for a bad complaint.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to sustain the demurrer to the complaint, and for further proceedings in accordance with this opinion.

PETTIT, J.—I disagree with this opinion.

*F. T. Hood*, for appellant.

*F. Winter*, for appellee.